UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA ANN GOETZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLY GARDNER, | ) | Case No.: |
| CIRCUIT ATTORNEY, CITY OF ST. LOUIS | ) | |
| in her individual and official capacities | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| SERENA WILSON GRIFFIN, | ) | |
| in her individual capacity only, | ) | |
| | ) | |
| VICTOR H. MARTIN, | ) | |
| in his individual capacity only, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**
**TITLE VII, 1981 and 1983**

Plaintiff Rebecca Ann Goetz, by counsel W. Bevis Schock and Erich Vieth states as her

complaint:

**INTRODUCTION**

1.      City of St. Louis Circuit Attorney Kimberly Gardner hired Rebecca Goetz to work in

Gardner's "diversion program." On May 19, 2022 Gardner called a meeting regarding a

particular offender. At that meeting Martin, a contractor to the office, repeatedly told

Goetz she could not do her job because she was White. Gardner and Griffin, sitting right

there, failed to intervene. Goetz protested this improper treatment. Goetz was discharged.

Goetz sues for race discrimination and retaliation under Title VII, and race

1

discrimination, retaliation, *Monell* Liability and conspiracy under 1981 and 1983. Goetz

seeks compensatory and punitive damages, and attorney's fees.

## PARTIES

### *Plaintiff*

2.      Plaintiff Rebecca Ann Goetz ("Goetz" or "Becky"), is an individual residing in Jefferson

County, Missouri.  Plaintiff is a White woman.

3.      Under Title VII, 42 U.S.C. 2000(e), Plaintiff is an "aggrieved individual."

### *Defendants*

4.      At all relevant times Kimberly Gardner is and has been the duly elected and serving

Circuit Attorney for the City of St. Louis, ("the City").  Plaintiff sues Gardner in her

individual capacity and in her official capacity.

5.      Gardner is an employee of the City.

6.      The City is a duly created and functioning local government entity within the State of

Missouri.  It is a charter city and is considered both a city and a county.

7.      Gardner as an elected official, has sovereignty, and is a policymaker for the City.

8.      Gardner has the authority to hire and fire within her office.

9.      Gardner had final authority in this matter to establish municipal policy with respect to the

policy which resulted in the racial discrimination against Goetz and her discharge.

10.     The city has more than 500 employees.

11.     In the claims in which Goetz sues Gardner in her official capacity Plaintiff holds the City

liable for her actions.[1]

---

[1] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

12.    At all relevant times Serena Wilson Griffin was a full-time employee of the City, holding the title of "First Assistant" in the Circuit Attorney's Office.  Plaintiff sues Griffin in her individual capacity only.

13.    On information and belief, before joining Gardner's office as the "First Assistant" Griffin had worked for years in the area of employment law.

14.    At all relevant times Griffin had management authority within the Circuit Attorney's Office.

15.    At all relevant times Victor H. Martin was a contract employee of the City, working in the Circuit Attorney's Office.  Martin was a state actor in this case because his conduct, which deprived Plaintiff of her constitutional and statutory rights, was caused by his exercise of a right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible.[2]  Plaintiff sues Martin in his individual capacity only.

16.    Martin is listed on the Missouri Department of Corrections Offender Search website as having an "Active Sentence" of "Murder 1st Degree."

17.    Gardner, Griffin and Martin are Black.

**JURISDICTION AND VENUE**

18.    Plaintiff brings this action pursuant to:

a.    Title VII, 42 U.S.C. 2000(e), in that Defendants intentionally discriminated against Plaintiff based on her race and Plaintiff's employment was terminated

---

[2] *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016).  *And see*: a private party may be deemed a state actor for purposes of section 1983 liability when he acts under cover of state law and performs a function traditionally exclusively reserved to the state.  *Fredin v. St.*, No. 19-CV-2864 (SRN-HB), 2020 WL 2217280, at *1 (D. Minn. May 5, 2020).

because of her race.

b.     Title VII, 42 U.S.C. 2000(e), in that Defendants retaliated against Plaintiff based on Plaintiff's race.

c.     42 U.S.C. § 1981a(b)(1), in that Plaintiff seeks punitive damages for each of her Title VII claims.

d.     42 U.S.C. § 2000e–5(k), in that Plaintiff seeks attorney's fees for each of her Title VII claims.

e.     42 U.S.C. 1981, (with 42 U.S.C. 1983 being the vehicle for the remedy), in that Defendants intentionally discriminated against Plaintiff based on race.

f.     42 U.S.C. 1981, (with 42 U.S.C. 1983 being the vehicle for the remedy), in that Defendants retaliated against Plaintiff based on race.

g.     42 U.S.C. 1981(with 42 U.S.C. 1983 being the vehicle for the enforcement and remedy) in that Defendants conspired against Plaintiff based on race.

h.     42 U.S.C 1981, 42 U.S.C. 1983 in that Plaintiff seeks punitive damages against individual defendants regarding her claims based on sections 1981 and 1983.

i.     42 U.S.C. 1988 in that Plaintiff seeks attorney's fees for each of her claims based on sections 1981 and 1983.

19.   This Court thus has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, with the above listed statutes being the statutes at issue.

20.   Venue is proper in this Court under 28 U.S.C. § 1391 because the relevant events occurred in the City of St. Louis, Missouri, which is within the Eastern Division of this Court.

## FULFILLMENT OF PREREQUISITE TO FILING TITLE VII CLAIMS

21. On or about October 31, 2022, Plaintiff filed two Charges of Discrimination ("Charges") with the Equal Employment Opportunity Commission ("EEOC"), one against the Circuit Attorney's Office and another against the City of St. Louis, each complaining of acts of discrimination alleged herein, see Cover Sheets, Exs. 1 and 2.

22. For each charge Plaintiff attached a copy of the draft of this suit, in substantially the same form as filed here, with the non-EEOC paragraphs struck through.  For the sake of judicial economy Plaintiff does not attach those copies.

23. The EEOC assigned two charge numbers:  560-2023-00308 (Circuit Attorney's Office), 560-2023-00310 (City of St. Louis).

24. On December 19, 2022, the EEOC issued the Plaintiff a Right to Sue Letter for each of these charges, Exs. 3 and 4.

25. Plaintiff has thus fully complied with the administrative prerequisites for the commencement of Title VII aspects of this action.[3]

## COLOR OF STATE LAW

26. At all relevant times, all Defendants acted under color of state law.  Particularly, at all relevant times, all Defendants acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri.

## JURY DEMAND

27. With regard to all issues and claims set forth in this Complaint, including damages and all other relief requested, Plaintiff demands a jury trial.

---

[3] Plaintiff does not herein sue the Circuit Attorney's Office because upon further research counsel have concluded that the Circuit Attorney's Office has no independent legal existence.

# FACTS

*Initial Hiring of Goetz, Prior Employment, Raise*

28.    On October 6, 2021 Goetz began employment at the Circuit Attorney's office of the City of St. Louis.  Goetz's title was Diversion Specialist.  She was exempt from overtime.

29.    Gardner, in her official capacity, and both Gardner and Griffin, in their individual capacities, exercised supervisory authority over plaintiff.

30.    Goetz's pay on her first check was $1,538.00 for 80 hours, which comes to $19.23 per hour, $40,000 per year.

31.    Goetz was hired by Gardner to work in the Circuit Attorney's Office's "diversion program," which is an alternative to the traditional criminal justice system, designed for low risk offenders. Through classes and training these offenders may have their charges dismissed.  The offenders in the diversion program are known as "participants."  When a participant successfully completes the program, the participant graduates and the charges are dismissed.

32.    Before her employment at the Circuit Attorney's Office, Goetz had twenty-three years' experience in government employment.  For all that time she was a probation and parole officer for the State of Missouri's Division of Probation and Parole.

33.    On Saturday, April 2, 2022, less than two months prior to Plaintiff's discharge, Gardner gave Plaintiff a raise of $5,000.  This increased Plaintiff's pay to $1,731.00 for 80 hours, which comes to $21.63 per hour, $45,000 per year.

34.    On information and belief Gardner awarded this substantial raise to Goetz either because Goetz had successfully completed a probationary period, because Goetz was performing her job up to the legitimate expectations of her employer(s), or because Goetz was

performing her job above the legitimate expectations of her employer(s).[4]

35.     Gardner had sometimes directed those in her office to avoid creation of written documents.

36.     Gardner had often directed those in her office to add the word "Draft" to written documents, even if they were final documents.

37.     At this time there are at least two lawsuits pending against the Circuit Attorney's Office's related to Sunshine Act violations.

*Normandy School District 8th Grade Field trip to Circuit Attorney's Office*

38.     During the spring of 2022 Gardner decided that the office should hold a "field trip" for students of the Normandy School District.

39.     Goetz organized and did much of the planning for the field trip.

40.     Goetz did this work on the field trip after she had received her $5,000 pay raise.

41.     It was arranged that the students would come to the St. Louis City courthouse and visit the Circuit Attorney's Office.

42.     The field trip occurred on April 27, 2022.

43.     Within the diversion program Goetz had supervision over a participant known here by his initials: "A.H."

44.     Martin serves as a mentor for diversion program participants.

45.     Prior to the Field Trip, Martin had told Goetz that he was "hanging out" with A.H. and had taken him to lunch.

46.     During the field trip, A.H. spoke to the Normandy students.

---

[4] *Wirtz v. Kansas Farm Bureau*, 311 F. Supp. 2d 1197, 1207 (D. Kas. 2004), *Broadwater v. Heidtman Steel*, 182 F. Supp. 2d 705, 721 (S.D. Ill. 2002).

47.  While A.H. spoke to the Normandy students, he struggled to deliver a coherent and polished presentation.

48.  Another participant, a female, tried to address the Normandy students but ended up in tears and unable to continue.

49.  During the field trip, a Judge of the Circuit Court of the City of St. Louis and Martin gave addresses. The students were given tours, and the Circuit Attorney's Office gave the students goody-bags, T-shirts and lunch.

50.  Gardner and all others in the office agreed that the field trip was successful on all anticipated metrics.

51.  Gardner personally praised Goetz for her work on the field trip.

52.  Gardner praised Goetz for Goetz's work on the field trip because Gardner recognized that Goetz was performing her job up to the legitimate expectations of the City and the Circuit Attorney's Office.[5]

*Children's Video Mocking A.H.*

53.  Two of Griffin's children, approximately 12 and 8 years old, attended the field trip activities.  While there, they witnessed A.H.'s presentation.

54.  After the field trip, Griffin's two children made a video in which they impersonated A.H. and mocked the way he talked to the students on the field trip.

*May 4, 2022 WebEx Meeting*

55.  On Wednesday, May 4, 2022, during a WebEx meeting, Gardner said that she had seen "a video."  The "video" to which she referred was the above referenced video made by

---

[5] *Wirtz v. Kansas Farm Bureau*, 311 F. Supp. 2d 1197, 1207 (D. Kas. 2004), *Broadwater v. Heidtman Steel*, 182 F. Supp. 2d 705, 721 (S.D. Ill. 2002).

Griffin's own children which mocked A.H.

56.   Gardner then announced during the WebEx that she had concluded that A.H. was "not on track" to graduate.

57.   At the time of the field trip A.H. had already had some training with a local trucking company and was in line to get a job with that company as a driver. The job would start approximately a month from the date of the Field Trip, but it would only happen if A.H. graduated from the Diversion Program.

58.   Goetz believed in A.H. It was Goetz's opinion that he deserved to graduate from the diversion program. She believed that he should be given the opportunity to leave the diversion program and work for the trucking company.

59.   Goetz was concerned that A.H. was being punished for his poor public speaking skills, and worse, for the way Griffin's children had presented him in their video.

60.   During the May 4, 2022 WebEx meeting both Griffith and Martin echoed Gardner's statement that A.H. was "not on track."

61.   Griffith further stated that A.H had lied when A.H. said he and Martin were "hanging out."

62.   After the WebEx, Goetz spoke with A.H.

63.   A.H. told Goetz that he had spent time with Martin, and they had indeed been "hanging out," and that the "hanging out" was a trip in which A.H. took Martin to Hooters.

64.   Jamie Myers is a licensed attorney.  At all relevant times she has been an employee of the Circuit Attorney's Office and the Prosecuting Attorney for the Diversion Program.

65.   Throughout Goetz's employment by the City in the Circuit Attorney's Office, Myers gave Goetz direction and trained Goetz in all aspects of the Diversion Program.

66.   At all relevant times Myers was Goetz's mentor and friend.

67.   After the WebEx of May 4, 2022 Goetz discussed A.H.'s situation with Myers.  Goetz
      told Myers that she felt that A.H. was being punished for not being a good speaker and
      because of a video that mocked him.

68.   Following that WebEx meeting, Plaintiff prepared an email to send to Gardner and
      Griffin assuring them that A.H. was on track to graduate from the Diversion Program.
      The email urged that the office shouldn't punish a young man for poor presenting skills,
      and that holding him back because of a mocking video arguably constituted cyber
      bullying.

69.   At all relevant times Anastasia Wright was an employee of City holding the title of
      Diversion Specialist in the Circuit Attorney's Office.  It was her duty to handle
      misdemeanor diversion cases and the Felony Drug Education Classes.

70.   At all relevant times Reddit Hudson was an employee of the City, working in the Circuit
      Attorney's Office.  He had generally the same duties as Goetz.  On information and belief
      his salary was $80,000 per year, exempt from overtime, (twice Goetz's salary).

71.   Goetz showed her proposed email to Myers, Wright, and Hudson for their review.

72.   Each of them commented that the email was well-written and satisfactory to send to
      Gardner.

73.   Goetz sent the email to Gardner.

*May 18, 2022 Meeting between Martin and Myers*

74.   On May 18, 2022, Martin went into Myers office and yelled at Myers about the wording
      on a proposed diversion program graduation certificate. He asserted that the words
      "Felony Redirect" on the graduation certificate "sounded like prison language."  Martin,

who is Black, told Myers, who is White, that she had "noodles for a brain" and that she was "acting like a slave owner."[6]

75. Shortly after that encounter, Myers spoke to Goetz about Martin's statements to her. Myers was so upset that she was yelling toward Goetz as she told Goetz what Martin had said to her.

*May 19, 2022 Meeting, Racial Comments Directed to Goetz*

76. At 10:30 p.m. on May 18, 2022 Goetz received an email from Gardner stating that there would be a meeting the next day to discuss A.H.

77. This meeting occurred in the morning of May 19, 2022.

78. The following persons were present at the start of the meeting:

    a.    Becky Goetz,

    b.    Kimberly Gardner,

    c.    Serena Griffin,

    d.    Reddit Hudson,

    e.    Victor Martin, and

    f.    Anastasia Wright.

79. Griffin asked Goetz for permission to distribute Goetz's email.

80. Gardner then stated to Becky: "I prefer that you don't write things out-- that you just come talk to me."

81. During the meeting Defendant Martin denied "hanging out" with A.H and then, when Goetz confronted Martin about going out to lunch with A.H., Martin stated that the only

---

[6] Many of the allegations in this complaint concern statements. Plaintiff often describes the statements as quotations but all such statements should be read as "words to the effect of," in that they are not exact quotes.

reason Goetz knew about this was because he (Martin) had told Goetz about it.

82.     Griffin told Goetz that Goetz did not understand Black vernacular.

83.     Griffin told Goetz that in Black vernacular "hanging out" meant being together "multiple times" and did not have a positive connotation, and implied participation in inappropriate activity.

84.     Goetz questioned how one should decide what words mean. She became emotional.

85.     Gardner asked Plaintiff what was going on.

86.     Plaintiff described the previous evening's conversation between Martin and Jamie Myers.

87.     Martin interrupted repeatedly stating "All you do is act like slave owners."

88.     Plaintiff questioned Martin's statement.

89.     Martin said: You will never know how to help these people.  You are not Black. The only reason these people are doing good is because of me.

90.     At that moment in the meeting the group was discussing a client who hadn't paid court costs the client was obligated to pay under the program.

91.     Martin began calling Plaintiff and Myers slave owners.

92.     Plaintiff said: What are you talking about? I don't care what color anyone's skin is.  What does this have to do with the program?

93.     Martin stated: You're not Black.  You will never understand them.

94.     Plaintiff stated: I'm feeling attacked because I'm not Black.

95.     Martin stated that he was bothered that Goetz kept track of the money that participants owed and had raised the issue that a participant failed to pay and lied about it.

96.     Martin then stated: You're not Black. You're just a slave owner.  That's all you are.  You're a slave owner. I'm Black.  You're not.  You will never help these participants.

12

97.    Gardner and Griffith did not stop Martin from making these accusations toward Plaintiff or admonish him. They did not defend Plaintiff, who was attempting to do her job. Instead, Gardner and Griffin sat in silence and allowed Martin to repeatedly direct these inappropriate racialized statements to Plaintiff.

98.    Eventually, Gardner stated: Obviously, there is some racial tension. I'm going to call in Mr. Waheed. He's used to addressing these types of situations.

99.    Gardner and Griffin then left the room, leaving Plaintiff in the room with Martin, Reddit Hudson and Anastasia Wright.

100.    Waheed entered the room because Gardner requested him to do so.

101.    Waheed asked what happened.

102.    Plaintiff stated that they were discussing a client who hadn't paid court costs when she had a duty to pay those costs, and the client lied about it.  Plaintiff also told Waheed that Martin was calling Plaintiff and Myers slave owners.

103.    Plaintiff said: I don't care what anyone's color of skin is.

104.    Martin stated: You're not Black and you never will be.

105.    Plaintiff stated: I'm being attacked because of the color of my skin.  I can't help that.

106.    Waheed stated: Becky, let me explain about our history.  Waheed said that the office must protect Gardner because she is a Black elected woman with a new agenda and people who don't like it.

107.    Waheed asked Plaintiff: Do you understand that because of your White privilege, you will never experience racism?

108.    Waheed told Plaintiff that only Blacks and Hispanics will experience racism.

109.    Waheed stated this to Plaintiff even though Plaintiff was being subjected to racist attacks

throughout the meeting, including the part in which Waheed was in the meeting.

110.    Waheed told Plaintiff: White people created racism. They put all the guns and drugs into Black and Hispanic communities and therefore . . . . racism.

111.    Plaintiff stated: I understand. I agree with you regarding the poor communities, but I don't understand why the color of my skin affects this program and what [Victor Martin] is saying.

112.    Waheed stated: This is a perfect example of micro-aggression as racism.

113.    Reddit Hudson then told Waheed that racism is about intent and that Plaintiff had no bad intent.

114.    Waheed replied to Hudson: You know that what you just said is a perfect form of a micro-aggression.

115.    Throughout his time in the meeting Waheed was justifying Martin's racially discriminatory statements.

116.    At that point the people in the meeting got up and left.

117.    At no time during the meeting did Gardner admonish Martin for his racist attack on Plaintiff or make any attempt to put a stop to it.

118.    When Gardner instructed Waheed to enter the room, on inference, she reasonably anticipated the kinds of things Waheed would say and that his statements would be racially inappropriate and discriminatory.

119.    During the meeting when Goetz complained about the statements attacking her, Goetz was opposing an unlawful employment practice, that is, she was opposing the racial discrimination to which she was being subjected in the Circuit Attorney's Office.

120.    After leaving the meeting, Goetz went to a previously scheduled court hearing. After

court she returned to her office.

121.  Shortly after she returned to the office, Waheed went to Plaintiff's office and said words
to the effect of: I want to see how you are doing.  I'm sorry . . .  Do you identify as
Latino?  . . . Only Blacks and Latinos experience racism.

122.  Goetz is not Latino and had never given any person in the Circuit Attorney's Office's
reason to think she was Latino.

123.  Waheed again started talking about racism.

124.  Goetz responded with words to the effect of:  What if I wanted to identify as Black?
What does that have to do with anything? You don't know who I am as a person. You
don't know what I went through in life. Does it matter how I identify?

125.  Early the next morning, Friday, May 20, 2022, Goetz sent an email to Eula Simmons, the
Support Staff Supervisor, stating that she was "taking the day off because she was not
feeling well."  Simmons sent back a cordial email acknowledging that Goetz would be
absent and stating that she hoped Goetz would feel better.

**Suspension, Investigation, Texts with Myers, and Discharge of Goetz**

126.  Later that day, on the afternoon of May 20, 2022, Griffin called Plaintiff and told her she
was on administrative leave pending "investigation."  Griffin stated words to the effect
of: We're locking you out of everything and putting you on administrative leave.

127.  Griffin further stated: You are being placed under investigation for the texts. We will go
through the texts line by line.

128.  Plaintiff replied, "What about the texts?"

129.  Griffin stated: I said we will go through the texts line by line when I call you.

130.  Gardner's Office placed Plaintiff on unpaid leave.

131.   Over the time Plaintiff had been working at the Circuit Attorney's Office Goetz and Myers had exchanged texts.

132.   Among the texts that Plaintiff sent to Myers after the meeting of May 19 were texts indicating that Plaintiff:

      a.     Plaintiff was upset at how she had been treated,

      b.     Assumed she might be fired, and

      c.     That she might be contacting a lawyer regarding the matter.

133.   Plaintiff's complaints to Myers in the form of these texts constituted protected conduct in that she was opposing an unlawful employment practice, that is, she was opposing the racial discrimination to which she was being subjected in the Circuit Attorney's Office.

134.   Particularly, the statements in the texts that Goetz was contacting an attorney constituted protected speech.

135.   The texts were no lawful reason to fire Goetz.

136.   Because Griffin said Goetz was being investigated for her texts, and Griffin was part of Gardner's management team, knowledge of the texts is credited to Gardner and Griffin.[7]

137.   On inference, Gardner and Griffin obtained those texts by demanding them from Jamie Myers.

138.   On inference, Gardner and Griffin read those texts line-by-line prior to terminating Plaintiff, and Plaintiff's complaints in the texts about discrimination in the office were one of the reasons that Plaintiff was terminated.

139.   Myers wrote texts of an equivalent nature, including on May 18 and 19, 2022.

---

[7] *Valdepena v. Rsch. Psychiatric Ctr.*, No. 4:11-CV-00547-DGK, 2012 WL 4829420, at *5 (W.D. Mo. Oct. 10, 2012).

140.    Myers was not fired.

141.    Because she was on administrative leave, Goetz stayed home the week of May 23, 2022.

142.    At the end of the week, on Thursday, May 26, 2022, Griffin called Goetz and told Goetz that she was terminated.

143.    Being terminated would dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

144.    Plaintiff asked Griffin why she was being terminated, but Griffin refused to give a reason.

145.    Goetz has never received a reason for her termination.

146.    Goetz was thus fully terminated on May 26, 2022.

147.    Goetz's discharge constituted an adverse employment action.

148.    Race was an explicit consideration in the decision to terminate Plaintiff.[8]

149.    Race discrimination against Plaintiff was also a reason for Plaintiff's discharge.

150.    In terminating Goetz, Gardner and the other Defendants purposefully and intentionally discriminated against Plaintiff.

151.    In the alternative, the Defendants other than Gardner, though they themselves lacked the decision-making power to terminate Goetz, acted in a deliberate scheme to trigger the discriminatory employment action of terminating Plaintiff. This scheme was motivated by discriminatory animus and intentionally and proximately caused Plaintiff's discharge.[9]

152.    Plaintiff's original complaints about her racially inappropriate treatment at the May 19, 2022 meeting were made in the presence of Gardner and Griffin.

---

[8] *Bonenberger v. St. Louis Metro. Police Dep't,* No. 4:12CV21 CDP, 2014 WL 5343323, at *2–3
[9] *Pribyl v. Cnty. of Wright,* 964 F.3d 793, 797 (8th Cir. 2020); *Bennett v. Riceland Foods, Inc.,* 721 F.3d 546, 551 (8th Cir. 2013). *Muldrow v. City of St. Louis Missouri*, 30 F.4th 680, 689 (8th Cir. 2022).

153. Plaintiff's complaints constituted protected conduct.[10]

154. The discrimination Plaintiff experienced, as described in this Complaint, interfered with Plaintiff's at-will employment.[11]

155. When Goetz made her complaints during the meeting and in texts she reasonably and in good faith believed that she was being discriminated against on the basis of race;

**True Reasons for Suspension and Discharge:**
**Goetz is White and Goetz Protested Being Subject to Racial Discrimination,**
**But For Test**

156. Martin and Waheed also both verbally attacked Goetz for her race at the May 19, 2022 meeting.

157. Goetz objected during the meeting to being the subject of racial discrimination.

158. Gardner, acting through Griffin, fired Goetz because Goetz is White and because Goetz protested to being subject to racial discrimination.

159. Defendants also retaliated against Goetz by terminating her because she complained to Defendants and to Myers that Goetz was being treated improperly by Defendants.

160. Defendants discharged and discriminated against plaintiff because of her race; and/or would not have done so but for her race.

***Monell* Liability**

161. The decision by Gardner to discriminate against Goetz on the basis of race, and to fire her because of her race, was made by Gardner as an authorized high-level decision maker.

---

[10] *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989).

[11] The district court in *McClease v. R.R. Donnelly & Sons Co.* undertook a detailed analysis of whether the term "contract" encompassed at-will employment under the statute. 226 F. Supp. 2d 695 (E.D. Pa. 2002). Noting first that "[e]very appellate court that has examined the legislative history of [42 U.S.C. § 1981, as amended in 1991] has concluded that Congress intended the term 'contract' to encompass at-will employment," the court determined that the legislative history clearly evidenced an intent for the term "contract" to include at-will employment.

162. Gardner's refusal to intervene to protect Goetz while Goetz was being attacked by Martin was also an action made by Gardner as an authorized high-level decision maker.

163. Gardner's decision, on inference, to direct Waheed to enter the meeting to inappropriately discuss race with Goetz and inappropriately lecture Goetz about race was also made by Gardner as an authorized high-level decision maker.

164. Gardner's actions and omissions described above were therefore acts of official government "policy" of the City.[12]

165. Gardner's actions and omissions described above are sufficient to make the City liable, and it was not necessary for the actions to be taken repeatedly.[13]

## Conspiracy

166. Gardner, Griffin and Martin (and possibly others as shall be revealed in discovery) conspired with each other to deprive Plaintiff of her constitutional rights.[14]

167. Gardner, Griffin and Martin engaged the overt acts described above in furtherance of the conspiracy, that is, they made statements and then discharged Goetz.

168. Gardner, Griffin and Martin reached a mutual understanding to violate Goetz's rights.

169. The fact that they were all at the above described meeting, and that Goetz was then fired shortly thereafter indicates that they reached an understanding to violate Goetz's rights.[15]

170. Goetz was deprived of her right to be free of discrimination based on race.

171. Goetz suffered the damages outlined herein.

## DAMAGES

---

[12] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).
[13] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).
[14] *Bonenberger v. St. Louis Metro. Police Dep't,* 810 F.3d 1103, 1108–09 (8th Cir. 2016).
[15] *City of Omaha Emps. Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 652 (8th Cir.1989) (alterations omitted) (quoting *Nelson v. City of McGehee,* 876 F.2d 56, 59 (8th Cir.1989)).]

**Garden Variety Emotional Distress**

172.   Goetz has suffered garden variety emotional distress, including but not limited to humiliation, mental anguish, inconvenience, loss of enjoyment of life, lowered feelings of self worth, weight gain, anxiety, nightmares, and fear for our community due to the racism of its leadership.

**Economic Damages**

173.   Goetz's lost wages from the date of discharge through June 30, 2022 are $3,302.56.

174.   From July 1, 2022 through the date of this filing Goetz has had lost wages of $105.20 per week.

175.   Since July 1, 2022 through the date of filing Goetz has also worked a second job, but Goetz does not include the income from that job in the calculation.

**Punitive Damages**

176.   The conduct Defendants and each of them in the Title VII claims was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against on the basis of her race.[16]

177.   The conduct Defendants and each of them in the Title VII claims was malicious or recklessly indifferent to Plaintiff's right not to be retaliated against on the basis of her race.[17]

178.   Gardner knew that both the discharge and the retaliation were in violation of the law prohibiting race discrimination, or acted with reckless disregard of that law.

179.   Griffin knew that both the discharge and the retaliation were in violation of the law

---

[16] 8th Cir Model Jury Instruction 5.72
[17] 8th Cir Model Jury Instruction 5.72

prohibiting race discrimination, or acted with reckless disregard of that law.

180. The conduct Defendants and each of them in the 1981 claims was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against and retaliated against on the basis of her race.[18]

181. The offensive conduct of each Defendant calls for deterrence and punishment over and above that provided by compensatory awards, and their conduct was motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.[19]

## CAUSATION

182. All the damages suffered by Plaintiff were the direct and proximate results of the illegal actions of Defendants described above.

## RELIEF SOUGHT

With regard to Counts of her Complaint, as appropriate by context, Plaintiff asks this Court to grant the following relief to Plaintiff:

183. Entering judgment in favor of the Plaintiff and against the named Defendants Count by Count in amounts to be determined Count by Count;

184. Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendants' improper conduct;

185. Back pay and reasonable front pay;

186. Awarding compensatory damages to Plaintiff for past and future pain and suffering,

---

[18] 8th Cir Model Jury Instruction 4.72
[19] *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002)

emotional upset, mental anguish, mental distress, emotional distress, humiliation, and loss of life's pleasures;

187.   Awarding punitive damages to Plaintiff under Title VII;

188.   Awarding punitive damages to Plaintiff under Section 1981 with 1983 providing the remedy;

189.   Awarding Plaintiff taxable and reimbursable costs, and reasonable attorneys' fees,

190.   Awarding front and back end interest at the statutory rate; and

191.   Granting such other and further relief as this Court may deem just, proper, and reasonable.

## NO QUALIFIED IMMUNITY

192.   No Defendant is entitled to qualified immunity on Plaintiff's 1981 and claims because the law related to those Counts is clearly established or the alleged conduct is an obvious case justifying liability and damages.

## Summary of Counts in this Complaint:

| Count | Claim | Defendants |
|-------|-------|------------|
| Count I | Title VII – Discharge Based on Race | The City of St. Louis |
| Count II | Title VII – Retaliation Based on Race | The City of St. Louis |
| Count III | 42 U.S.C 1981 – Discharge based on Race | Gardner in her official and individual capacities, Griffin in her individual capacity |
| Count IV | 42 U.S.C 1981 – Retaliation Based on Race | Gardner in her official and individual capacities, and Griffin in her individual capacity |

22

| Count V | 42 U.S.C. 1981 *Monell* Liability | The City of St. Louis |
| Count VI | 42 U.S.C. 1981 Conspiracy | Gardner in her official and individual capacities, and Griffin and Martin, in their individual capacities |

**COUNT I**
**TITLE VII - DISCHARGE BASED ON RACE**
**AGAINST THE CITY OF ST. LOUIS[20]**

193.   Plaintiff incorporates all prior paragraphs.

194.   *First*, the City of St. Louis discharged Plaintiff.

195.   *Second*, Plaintiff's race was a motivating factor in the decision of Gardner and the management employees of the Circuit Attorney's Office to discharge Plaintiff, that is, the plaintiff's race played a part in their decision to discharge the plaintiff.[21]

196.   *Third*, Plaintiff sustained damage.

197.   Actions of Gardner and the employees the Circuit Attorney's Office in discharging Plaintiff were taken in the scope of their employment as employees of the City of St. Louis and so are attributable to the City of St. Louis[22]

198.   The conduct Defendants and each of them in this Title VII Count was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against on the basis of her race, and therefore Plaintiff is entitled to punitive damages.[23]

WHEREFORE, as a direct and proximate result of Defendants' violations of Title VII,

---

[20]"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (action under 42 U.S.C. § 1983).
[21] 8th Cir. Mod. Jur. Instrucs. 5.21 for definition of motivating factor.
[22] 8th Cir. Mod. Jur. Instrucs. 5.23 regarding agency.
[23] 8th Cir. Mod. Jur. Instrucs. 5.72

plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks the relief stated in the Relief section of this Complaint, particularly compensatory and punitive damages against the City of St. Louis.

## COUNT II
### TITLE VII - RETALIATION BASED ON RACE
### AGAINST THE CITY OF ST. LOUIS

199.   Plaintiff incorporates all prior paragraphs.

200.   *First*, Plaintiff complained to employees of the Circuit Attorney's Office that she was being discriminated against on the basis of race.

201.   *Second*, the plaintiff reasonably believed that she was being discriminated against on the basis of race; and

202.   *Third*, the City of St. Louis discharged Plaintiff.

203.   *Fourth*, the City of St. Louis would not have discharged plaintiff but-for plaintiff's complaints of discrimination on the basis of race.[24]

204.   *Fifth*, Gardner and the management employees of the Circuit Attorney's Office stated reason that Goetz was discharged, that it was because of texts Goetz wrote, is a pretext to hide retaliation.[25]

205.   *Sixth*, Plaintiff sustained damage.

206.   Myers was not fired despite writing texts similar to those written by Goetz.

207.   The conduct of Defendants and each of them in this Title VII Count was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against on the basis of her race, and therefore Plaintiff is entitled to punitive damages.[26]

---

[24] 8th Cir. Mod. Jur. Instrucs. 10.41.
[25] 8th Cir. Mod. Jur. Instrucs. 10.41.
[26] 8th Cir. Mod. Jur. Instrucs. 5.72

WHEREFORE, as a direct and proximate result of Defendants' violations of Title VII, plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks the relief stated in the Relief section of this Complaint, particularly compensatory and punitive damages against the City of St. Louis.

**COUNT III**
**42 U.S.C. 1981 and 42 U.S.C 1983:  - DISCHARGE BASED ON RACE**
**AGAINST KIMBERLY GARDNER**
**IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, AND**
**SERENA GRIFFIN**
**IN HER INDIVIDUAL CAPACITY**

208.   Plaintiff incorporates all prior paragraphs.

209.   *First*, Kimberly Gardner and/or Serena Griffin discharged Plaintiff; and

210.   *Second*, neither Gardner nor Griffin would have discharged the Plaintiff but-for plaintiff's race; and

211.   *Third*, the Plaintiff's race was one but-for cause of the adverse employment decision;[27] and

212.   *Fourth*, Plaintiff sustained damage.

213.   The conduct of Gardner and Griffin in this 1981 Count was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against on the basis of her race, and therefore Plaintiff is entitled to punitive damages.[28]

WHEREFORE, as a direct and proximate result of Gardner and Griffin's violations of 42 U.S.C. 1981, Plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks the relief stated in the Relief section of this Complaint, particularly

---

[27] 8th Cir. Mod. Jur. Instrucs. 10.41, and see *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989)
[28] 8th Cir. Mod. Jur. Instrucs. 5.72

compensatory and punitive damages against Gardner and Griffin.

**COUNT IV**
**42 U.S.C. 1981 and 42 U.S.C 1983:  - RETALIATION BASED ON RACE**
**AGAINST KIMBERLY GARDNER**
**IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, AND**
**SERENA GRIFFIN IN HER INDIVIDUAL CAPACITY**

214.  *First*, Plaintiff complained to Gardner and/or Griffin that she was being discriminated against on the basis of race.

215.  *Second*, the plaintiff reasonably believed that she was being discriminated against on the basis of race; and

216.  *Third*, Gardner and/or Griffin discharged Plaintiff.

217.  *Fourth*, Gardner and/or Griffin would not have discharged plaintiff but-for plaintiff's complaints of discrimination on the basis of race.

218.  *Fifth*, Gardner and the management employees of the Circuit Attorney's Office statement that Goetz was discharged because of texts, is a pretext to hide retaliation.[29]

219.  *Sixth*, Plaintiff sustained damage.

220.  Myers was not fired despite writing texts similar to those written by Goetz.

221.  The conduct of Defendants and each of them in this 1981 Count was malicious or recklessly indifferent to Plaintiff's right not to be discriminated against and retaliated against on the basis of her race, and therefore Plaintiff is entitled to punitive damages.[30]

WHEREFORE, as a direct and proximate result of Defendants' violations of Title 1981, plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks the relief stated in the Relief section of this Complaint, particularly compensatory and punitive

---

[29] 8th Cir. Mod. Jur. Instrucs. 10.41, and see *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989)
[30] 8th Cir. Mod. Jur. Instrucs. 5.72

damages against the City of St. Louis.

## COUNT V
## 42 U.S.C. 1981 and 42 U.S.C. 1983: *MONELL* LIABILITY
## AGAINST THE CITY OF ST. LOUIS

222.    Plaintiff incorporates all prior paragraphs.

223.    *First*, that the Defendants deprived the Plaintiff of her constitutional rights as specified in

    Instruction ____; and

224.    *Second*, the deprivation of the Plaintiff's constitutional rights directly resulted from either

    (1) an official written policy of the Defendant or (2) an unofficial custom; and

225.    *Third*, Plaintiff sustained damage.[31]

    WHEREFORE, as a direct and proximate result of Griffin's violations of 42 U.S.C. 1981,

plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks

the relief stated in the Relief section of this Complaint, particularly compensatory damages

against the City of St. Louis.

## COUNT VI
## 42 U.S.C. 1981, 42. U.S.C. 1983 CONSPIRACY
## AGAINST KIMBERLY GARDNER
## IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, AND
## SERENA WILSON GRIFFIN, IN HER INDIVIDUAL CAPACITY ONLY AND
## VICTOR H. MARTIN, IN HIS INDIVIDUAL CAPACITY ONLY

226.    Plaintiff incorporates all prior paragraphs.

227.    *First*, Defendants Gardner, Griffin and Martin conspired with each other to deprive

    Plaintiff of a constitutional right(s); and

228.    *Second*, at least one of the alleged co-conspirators engaged in an overt act in furtherance

    of the conspiracy; and

---

[31] 8th Cir. Mod. Jur. Instrucs. 4.48.

229.    *Third*, the overt act injured the Plaintiff; and

230.    *Fourth*, Plaintiff was deprived of the constitutional right or privilege.

231.    *Fifth*, Plaintiff sustained damage.[32]

WHEREFORE, as a direct and proximate result of violations by Gardner, Griffin, Martin, of 42 U.S.C. 1983, plaintiff has suffered the damages set forth in the Damages section of this Complaint and seeks the relief stated in the Relief section of this Complaint, particularly compensatory and punitive damages against Gardner, Griffin and Martin.

Respectfully Submitted,


   /s/ W. Bevis Schock   .                   /s/ Erich Vieth
W. Bevis Schock, 32551MO          Erich Vieth, 29850 MO
7777 Bonhomme Ave., Ste. 1300    20 South Sarah Street
St. Louis, MO  63105                    St. Louis, MO 63108
wbschock@schocklaw.com          erichviethattorney@gmail.com
Voice:  314-726-2322                  Voice: (314) 604-3454
Fax:     314-721-1698                  Fax: (314) 310-1181
Attorney for Plaintiff                   Attorney for Plaintiff

---

[32] 8th Cir. Mod. Jur. Instrucs. 4.52.